So you return. Yes. Quite a week. Yes. Double duty. Mr. Hoffman was here yesterday. Oh, no. May it please the Court, Paul Hoffman for the plaintiffs in this case. Your Honor, just to frame the case from our perspective, the Platana Group and the Rubicon Group have had a long-standing venture to process, market, and sell seafood products in the United States, and also elsewhere, but certainly in the United States. The venture... Rubicon and who else? I'm sorry. The Platana Group, which would include, from our standpoint, S.S. Rosen and Rubicon and Whales, Whales being part of the Rubicon Group. Okay. And in fact, Platana created Rubicon, and Rubicon was created to sell Platana products in the United States. This was not an arm's-length buyer. This is somebody... They were working hand-in-glove on a venture, all aspects of the venture, including marketing, sales, imports, dealing with the FDA, audits, all sorts of things, right? And the venture, at least in part, depended on the exploitation of workers in violation of the Trafficking Victims Protection Act. So what's the focus of the Trafficking Victims Protection Act? Well, Your Honor, that would be the second step in the argument. I know, and we'll get there, but what's the focus? Just answer that. Well, the focus for the benefit prime would be where the benefit occurs. No, what's the focus of the statute? Well, I think the focus has different... I mean, there are different focuses. So you're arguing that you break down the statute in phrases and apply a different focus to each portion. Right. I think that would... Is there any authority whatsoever for that proposition? Does the RJR Nabisco case state that when it sets out the test for extraterritorial jurisdiction? I don't think it answers that question. I think it decides where that focus is in that particular statute. I think in this case, Congress had a separate provision for benefit. Okay, so what's the authority for that? The authority that there's a... That we should parse the statute phrase by phrase and find a different focus for each section of the statute. Well, I think the question is to try to ascertain what Congress's focus was, right, for that part of the test. And that's... I mean, the authority is... The line of cases is saying you should try to find out what Congress's focus was, what they were addressing. But what you're... And what they're addressing in the benefit part is where the benefit takes place. Right. But what you're adding to that is just your argument. It's just your ipsy-dixit. That's the basis of this notion. That's the basis of my argument. I don't have a case that says if maybe my colleagues will correct me. Well, it wasn't in the brief, so I doubt it. So that's all I'm asking, just to acknowledge that there's no authority for it. That's our position. That it's a question of looking at congressional intent. I need to be oriented here. What are we talking about? We're talking about the subject matter jurisdiction with regard to the Thai companies, or are we talking about the cause of action with regard to the American companies, or what? What are we discussing? Well, with respect to the American companies, for one thing, there's not... It's not an extraterritorial... I mean, to back up, I mean, it's not an extraterritorial application with respect to Rubicon and Whales anyway. They committed a substantive offense within the United States. Substantive offense being... So within that line of cases, it's still a domestic... Substantive offense being the benefit. Knowing benefit, at least under 1589B, and then... So the other issue just goes to your argument that the Thai companies benefited in the United States because they sold fish in the United States, aside from what they... Well, we have a domestic... Aside from Rubicon. Right. Because the Rubicon sales never actually happened. Well, they tried to sell, right? They tried to sell. I mean, it was the 14 containers for Wal-Mart.  They tried. Which were rejected. But they did, in fact, sell a whole lot of other fish in the United States. They did, yes. Right. And there's no question about that. So Judge Berzon's correct to parse this out. There are so many issues here with respect to the jurisdiction with the different defendants because some of them were domestic corporations. They had... Some of them were corporate here in the United States, and some were not. Right. And so you had made an argument with respect to a domestic application of the statute, the TVPA, based on receiving benefit in the United States. That's right. And to go there, then you have to go into the RJ or Nick Biscoe analysis focus. And that's why I asked you about that right away. Not necessarily. I think if there's a domestic application of the statute, I don't think you have that problem. But the other issue, I mean, if I can say, I mean, our main argument is that the statute is extraterritorial anyway, right? And if you look at the Roe versus Howard analysis, it's clear that 1596 makes all of our offenses extraterritorial. All of them. And... I'm sorry. It says that the defendant has to be present in the United States. Right. Right. It's extraterritorial. There's a present-in issue, which is a separate issue, right? From our standpoint. I mean, the U.S. defendants obviously are present-in, right? Our argument with respect to Pitana being present-in, there's a two-fold argument to that. Maybe it's more fold than that, but at least two-fold. It's a sharp pay, I think. That I'm thinking right now. The first fold is that they accepted jurisdiction. They waived personal jurisdiction and appeared in this case. That's the same thing as an individual defendant over whom there's no contact with the United States. But you're claiming that they are precluded because they waived personal jurisdiction? No, I'm saying that in fact the statute, they are present-in within the meaning of the statute by coming... But not based on some estoppel notion. Just subsequently. Just estoppel notion. They willingly came here. Just like an individual... comes to the United States. And they become present-in. And in fact, all the statutes we cited, the present-in statutes, the found-in statutes, all the criminal cases where, in fact, they don't have to come in here voluntarily as an individual. But does that give us subject matter jurisdiction as a court? Their waiver of personal jurisdiction, your argument is it gives us subject matter jurisdiction. Well, it does in the sense that the statute is broadly defined, right? And so the breadth, the first fold is that if you come here, just as an individual comes here, you are present-in within the meaning of the statute. And Congress can write it that broadly. The second part... Hold on. Okay. That's an interesting argument. But present-in, wouldn't you have to be present-in while the alleged activity was taking place? So if, even accepting your argument that they were present-in during the time that the allegations took place, they wouldn't have been present-in under that theory? Well, and the statute doesn't say that they have to be present-in at the time. So you could have a person who, or a company who's been in business for a hundred years, they've moved their operations to the United States. Everything that they... Well, I guess then you've got statute of limitations problems. But everything that they've done before they moved to the United States is now present in the United States under that theory? Well, they are present-in. There may be other defenses to it, but they would be present-in, right? They would be. And I mean, for example, say a person, and there's some cases we cited, hijackers, kidnappers, people that have engaged in genocide under all the different statutes that we cited that use this wording, the people that committed those acts were not present in the United States when they committed them. They came here. And when they were here, they're subject to responsibility for these kind of serious crimes. The Hijacking Act case that you're discussing addressed a challenge as to whether the defendant was found in the United States when he was forcibly arrested and brought into the United States. And he was arguing that wasn't found-in or present-in. So it doesn't seem to be analogous to what we're addressing here. Well, it's, and in fact, ours is a clearer case. We weren't, they weren't hijacked. They came. They decided to come and appear, and they were present-in for this. But the district court concluded that your argument that minimum contacts, the personal jurisdiction analysis to decide if a corporation has sufficient presence within a forum to have subjected itself to proceedings in the forum would make the extraterritorial position, excuse me, provision of the TVPA superfluous. So if all you have to show is personal jurisdiction, minimum contacts, you wouldn't need Section 1596. Why do you need an extraterritorial provision if you can just bring a corporation into court here because you can establish minimum contacts? Well, because there might be some cases, for example, where there aren't any minimum contacts. So for an individual, maybe, it doesn't apply, but- Well, even for a company. You see, that's why I was- Say you've got a sweatshop on the other side of the border in Mexico. They never come in. They just, they give it- But they sell the sweatshirts here. So- Well, maybe they sell them to a U.S. company on the other side of the border, and they never come in. They brought, the U.S. company brings them in. I still think that the extraterritorial jurisdiction would apply to them. Why would- I'm sorry. Now, wait a minute. First of all, it would be nice to have, given the number of issues here, it would be nice to know which issues you intend to argue because I'm a little surprised that we've gotten off on this and haven't gotten to the question of the cause of action against Rubicon and Wales. But- I'd be happy to do that. But now I'm going to stop you for a minute as long as we're here. Why, if one assumes that this, that Judge Nelson's skepticism about the timing here as to presence, even if you're right about presence, is a difficulty, then you would have to- So I gather your backup position in this regard, aside from your benefit position, would be that they did have minimum contacts. So they were present, even if- That is our other position. That's our second fault. Right. Okay. With respect to Patana- I was a little surprised by that, only because you certainly wouldn't have specific personal jurisdiction over these people. Right. No, in fact- And so it would have to be, and simply because they sold a lot of products here, that would be enough? Well, no. The fact of the matter is that they have systematic and continuous activities in the United States. That was not denied. So I mean, there are- Their activities are, their products- They're in a venture where they're selling millions of tons of seafood to the United States over a period of time. So I mean, there is an argument about that. The thing is, the court never really addressed that question, right, as to whether present in means what that means. It's parallel to Patana. And in our position, I mean, with respect to the Walmart thing, which is what happens during the time our people are there in the closest connection, we'd say you'd even have specific jurisdiction with respect to those claims under the Due Process Clause. I don't think that's what present in means. It means more. Well, but they couldn't have been harmed by the fish that weren't sold. Well, maybe I should, I mean, to go back to your original- But why don't we go back? I really would like to hear about- I mean, the problem is there are a lot of interlocking issues. Right. I mean, we've been dealing with the Patana issues. The Rubicon issues, it seems to me, maybe are more straightforward. Right. But a different issue. Yes, and I'd like to know about that because there seems to be a great deal of, a great many different possibilities about what this participating in a venture with knowledge is all about. Right. Right. And to go through the elements of all that, they have to participate in a venture, right? So that's one of the first issues. And the venture does not have to be a, it doesn't have to be a trafficking venture. It can be a venture, the way that the statute defines it, is a venture that has engaged in a violation of the act. Now, the other side did not contest four of our plaintiffs with respect to the violations. The other three, there's plenty of evidence about violations. So there is a venture that Rubicon and Patana were involved in that engaged in violations Their contention would be that they don't have to engage in any of the violations. Right. That's exactly right. They have to, but that engaging part, participating in the venture can simply be selling these, selling these, being part of this group and selling the fish. Right. And we've tried. That's the venture. The venture is the, is, is, is selling. Right. And from our standpoint, it's a venture that's based on forced labor, among other violations. So in other words, this venture is able to undercut domestic producers by using forced labor to generate the seafood. But more conceptually, does that matter? In other words. Well, we don't think it does matter. Right. That's what I'm trying to find out. But even if it did matter, we would have facts showing that this is a venture that engaged in violations of the act, which is the way that it's defined in the statute. And our, all of our positions depend on the statute and the plain language of the statute. Wait a minute. Just slow down. Except for which? Except for your argument on attempted benefits. That language is nowhere in the statute. No. Attempted benefits in the statute. 1594. That's not the statute we're talking about. We're talking about the civil remedy in 1595. Well, but, but, but 1594 applies to everything. Well, it applies to the criminal provisions of the statute. Right. So you don't want to consider, well, we. I don't know if you want to get to that. Well, because there's this discussion about what's in 1591 with respect to negligence or recklessness, knowledge, and you don't want to consider that part of the statute. So I think we're looking at section 1595 and what does that language mean? And that's confusing enough that, you know, we're trying to parse this, this phrase. They can bring a civil action against a perpetrator or whoever knowingly benefits financially or by receiving anything of value from participation in a venture of which that person knew or should have known has engaged in an act in violation of this chapter. Right. And, and, and our, the, the, the court in our view made errors in interpreting the statute, for example, in requiring that participation requires active participation or operation and management. I think Bisline and Riccio completely reject that. Does that matter that those were at a motion to dismiss stage? And so you're looking at plausibility of pleadings rather than summary judgment? I don't think so. Based on the analysis in the case, they're basically saying that the law firm, by providing legal services to a venture that they were not a part of, they were just providing legal services to it, that participated in a venture. But in Riccio and Bisline, both, the court focused on their knowledge. The lawyers knew what Warren Jeffs and the others were doing. And in Riccio, the hotel owner knew about it. It was high-fiving the defendant in the parking lot and wanted to have, they ignored the woman's pleas for help. They saw how, what her condition was. They ignored it. But that has nothing to do with participation in a venture, right? I mean, participation is to take part in, in the most general way. But they knew. I mean, they were participating in something they knew was illegal as opposed to what if, what if somebody who provided accounting services to Fathana or delivered paper or janitorial services, you know, are they participating in this venture to, to engage in human trafficking? I mean, how far do we, how far do we go with that? It's a difficult line. Well, for one thing, they have to know or should have known that there were violations of the statute going on, right? That's the second part. But the first part is that what is, can I ask a question about participation in a venture? There actually is a definition in 1591 of participation in a venture. And it puts in 1591, it's with regard to only 1591, it's the same section that also defines venture. Now, should we just ignore both of those definitions? Because the participation, the venture definition is very broad and the participation in a venture is pretty narrow. It says knowingly assisting, supporting or facilitating a violation of subsection A1, which, which does seem to swallow up a lot of the rest of the statute. So are we just forgetting, are we just ignoring both of those? I don't think that those apply to the other provisions. Right, so neither one applies. Right. So the, so the broad venture you can't take benefit of either. Neither of those apply. Well, but I think that the question is whether the statute, from our standpoint, the Congress has used words that generally speaking have broad implications. But they've then defined them, I think, against the words to say that participation in a venture doesn't necessarily mean just participating in a venture. It means knowingly assisting, supporting or facilitating a violation, even though there's nothing in the words participation in a venture that suggests that. But why would Congress do that if aiding and abetting and other, and all of those other things were already covered before they did that? But they, I don't know, they did it. I don't know why. In other provisions it was, and it was in RICO, so. I don't know why they did it, but they did it. Well, but they used the, they used the kinds of words that have a general broader meaning than that, that participate. I mean, look at the motel owner. But what I'm saying is when they, the one time they got around to defining it, they seemed to define it against the language, i.e. much more. But even in, even in Bisline and even in, and even in RICO, which use those definitions, the motel people, the employees that are, that are liable or would, are proposed to be like a RICO. No, I agree with you. I'm just saying that they. Because we're in the room to people, that's all. Okay. They got their salaries. But they were, you could, they were more engaged in the venture because they had, they were going to get a benefit. They were going to rent the room. They wanted to do this over and over again. And they wanted to have this relationship and, and, and they knew about the illegal conduct as well. Well, but, but our position, right, is that, and our position is that there is evidence in the record that they knew or should have known about this conduct too, and it's central to this business model. That for example, they were, when I say they, Rubicon's employees, Greg Small in particular, was there at the pre-audit for, before the Walmart audit, the Walmart audit that let them know that there were violations of this act going on, which led them to, to reject the 14 containers of ship worth more than $3 million. Well, I don't think the record showed that it was an audit that alerted Walmart to potential problems, but it was the, the, Mr. Rothfeld, the plaintiff who went to the newspaper and was a whistleblower. And then there was a story and then there was press coverage in about February 2012. And then they admitted the positions that I think Wales or Rubicon, that they knew of it by then. And that's when Walmart became concerned. Well, I think Walmart, well, I think the record shows that Walmart actually did an audit and based in part, at least in part on that audit, they rejected the shipments. So that, and, and from the standpoint of our evidence, there was widespread violations going on at that plant, right? So anybody who would go there would see the housing conditions, the fact that work permits were being withheld. Well, that's pretty speculative. If you don't have evidence of that, because the workers housing units were elsewhere. They came in on a bus. A lot of the allegations relate to activities that they say occurred in Cambodia when they were made promises that were broken. How would you, how would Mr. Smalls see that at a visit? Employees were the ones that recruited him. But how would Mr. Smalls see this when he's on this site? How would he know any of this? I mean, what's the evidence of that? There's evidence by the fact that they had, they visit the place, they're in a hand in glove relationship. Patana's CEO is on their board. I think there's inferences from all of those facts and the other facts that we identified that a jury should decide whether they should have known. Plus the, the idea that there's trafficking and forced labor in the seafood processing business in Thailand was widely known. And so they're at least on inquiry notice from the standpoint of, should you know? If they were there, they would have found out, right? If they had asked the questions, they had access to, to everything there. That's the should have known standard. They could have asked for anything. They could have said, where are the work permits? So you rely, I think, on a 2008 report to establish that, you know, that it was generally known that there were issues in this industry in Thailand. No, not at all. So, well, you do. It's in the library. Well, we rely on the 2008 report because it mentions Patana, but in terms of the- Right. And then, of course, it's years before this factory was even opened or these plaintiffs worked in Thailand. But the notion of generalizing- They were still involved in the ventures. Sure. But I want to get to a different point. Notion that you just articulated that because they generally should have known there were problems in the industry, that means what the statute was trying to accomplish and would impose liability is if you had anything to do with that country and that industry, no go. You're participating in a venture. That's enough. You should never be there. No. It's the combination of factors. It's not just one report, right? It's the Department of Labor reports. It's the dirty goods list. It's their- True, but not all- Those identified- Right. And all of those reports have specific dates and they go to this generalized problem in the industry. But they go up until the events here and beyond the events here. But in addition to that, you have this particular relationship between Patana and Rubicon. This is not an arm's length buyer. It's not the accountant that comes in and does the books occasionally. It's a company that was, first of all, Rubicon was created by Patana. This is something that's been going on, was going on for more than a decade at the time this happened. There's loads of evidence in the record about how closely they worked together, about trainings that Rubicon employees did for Patana employees, about audits and pre-audits that they did, about the fact that they engaged themselves in labor practices that Patana had, that they did when the media came out in early 2012.  They handled the public relations for this. They went to U.N. meetings. Over your time. You have another sentence? You have one sentence? There are obviously a lot of... Our position, though, is that, first of all, participation in a venture is certainly broadly defined. But even if it was narrowly defined, you have a relationship between Patana and Rubicon that meets any definition of participation in a venture. And that if they knew or should have known, and we say that there's enough evidence in And they clearly benefited. And benefit is not just... It wouldn't meet this definition in 1591, would it? Knowingly assisting, supporting, or facilitating a violation. Well, I think, yes. I mean, if they should, if they knew, they are, their whole purpose was facilitating... Because under that, I mean, that seems to read out the should have known. Doesn't say should have known. So it can't be that. But our position is... I mean, we're going by the statutory language of should have known, both in 1589b, which is a substantive violation, by the way, which is extraterritorial and applies to Rubicon and Wales no matter what, and the definition in 1595a, similarly. And the benefit can be anything. It doesn't have to be money. I mean, clearly Rubicon and Wales benefited from this relationship. They had access to large amounts of seafood to supply big companies. They were... They actually, in their marketing materials, had pictures of this factory. And obviously it was of benefit to them. And you don't have to have a financial benefit. It can be anything of value, even if it's to the overall business model. Thank you very much. Thank you. Thank you. Thank you. May it please the Court. Good morning, your honors. My name is Brian Daly. And I represent the four defendants in the case, the two Thai companies and the two American companies. My time is limited. I will respond to the main arguments that were just made. There's a lot to unpack in this case. The statute is very difficult. I understand that. I've spent many, many hours going through it. But I'm going to try to simplify it, if I can. First, for Fratana and S.S. Rosen, there simply is no subject matter jurisdiction for the federal courts, because neither one of those companies is present in the United States. To suggest that personal jurisdiction is the same as subject matter jurisdiction in the first place, to me, makes no sense. Secondly, as a former federal prosecutor, I... He's not saying they're the same. He's saying that the statute uses the same standard as is used for personal jurisdiction. Trying to say that because the word present should not mean physical present, it could mean something of the equivalent of due process. That's not the truth, your honor. Because in the universal crime world, for crimes that are done overseas, it has been and always will be, I think, at least where Congress stands right now, the fact that you have to have TAG jurisdiction. You have to have... What jurisdiction? TAG. I have to have jurisdiction over the person. I have to have them here in the United States. It's that way with the genocide statute. It's that way with the torture statute. And in my opinion... Well, on that theory, he prevails. I mean, the genocide statute, I gather that you would say that if the person, if the crimes were committed in Germany in 1945, but the person is here, there's jurisdiction. If the person is here later in time... And he's saying they are here because they showed up. Now, subject matter jurisdiction, I think, in fairness, your honor, has to apply at the time you file your complaint. Has to apply what? Has to be present when you file your complaint. Fatahna was not present at that time. When you file your complaint? Why? Well, you have subject matter jurisdiction. You're not arguing that it had to be present at the time of the offense? I think it has to be present at the time of the offense. Well, then your genocide example is wrong. Well, it may be wrong, your honor, but the point of that is only this. Presence means physical presence. Physical presence. But there are other statutes that say physical presence, and this one doesn't. That's true. There are the statutes that say physical presence, but in the world of universal crime, you find that there's no... I mean, just, again, from my former prosecutor days, you're not going to do an international criminal in the United States, in Los Angeles, unless you have present, personal, physical jurisdiction. But it seems to me your better argument is that subject matter jurisdiction has to exist at the time of filing the complaint. And I think that's a general proposition. And normally, we can't, I mean, maybe there are some exceptions, but I'm not aware of many where you could impose subject matter jurisdiction after the complaint's filed. I believe that's true, your honor. That is definitely our position. And so, with respect, I think the Thailand companies getting subject matter jurisdiction over here would be virtually impossible based on these facts. Let me turn, if I can, though, to the Rubicon. And they're not... Just one more second. Sure. They're not physically present because they don't, they're not incorpora... What would make physical presence for a corporation? Excellent point. You know, I was looking at this myself, your honor. Most multinational companies in the world have physical presence in the United States. They have offices. They have affiliates. They have real agents that they have here who work for them. They have subsidiaries. They have lots of ways to be physically present. But Thanda doesn't have any of that. What if some of their employees had showed up with the shipments? Would that have made them physically present? It's an interesting question, your honor. I don't know the answer to that. There's no evidence of that. There's no evidence of that at all. Okay. Not this case. But Thanda... And the fact that they ship a lot of, I gather they ship a lot of shrimp, quite aside from Rubicon. Well, I want to clarify that because there's different factories. We're talking about the Songklong factory, you know, only. Now, I thought the record shows that that factory ships a lot of fish. It does, but not during the time period when the plaintiffs weren't there. I thought it did show that because there were some audits from that time period that seemed to show that there was a lot of fish. I would ask, your honor, to look at the record on that. The one ER that they have, I believe, if I can, your honor. Isn't there a... The Wal-Mart preclearance process in 2011 reported that Pathanus Songklong factory exported 60% of the product from that factory to the United States. And another one said that by 2012, it had increased to 65%. Is that wrong? I believe, your honor, the question is really from the time period. We don't have information about whether or not Songklong was sending shrimp to the United States. So what I just read you isn't so. I don't believe so, your honor. All right. I made it up. No. You don't think you made it up. She didn't make it up. There are documents in the record, but what's interesting about those audits is that the plaintiffs never cited them as a basis for the sale of shrimp in the United States. The defendants actually provided those documents, and there are some, I would think, some serious evidentiary issues with the admission or consideration of those documents, and that's not been addressed or briefed at all because plaintiffs didn't rely on them. They never suggested that was the basis for saying there were sales here. Good point, your honor. Thank you. Well, so you come back to this idea of, well, can the laws of the United States under 1596 reach over to Thailand and bring these people over here extraterritorially? I would say no. I think Congress was careful to limit the scope of extraterritoriality for the same reasons that you heard in the ATS cases with, you know, with Morrison, Kiobel, Jessner. You've got to be careful because there's countervailing policies that are very important. You don't want to interfere with foreign relations. Thailand is one of our greatest allies in Southeast Asia, and a case like this where the Thai government came in and investigated the allegations, I'm sorry, you look puzzled, your honor. Well, I think this is sort of a far-fetched, not far-fetched, but far away from what we need to know in this case to decide. It's true. I'm sorry. Let me get back to the Rubicon. Let me leave this and go to Rubicon. Under Rubicon, I think, your honor, the two problems, one, the benefit, I'm not really sure what benefit Rubicon could have received with respect that's tied to the false, to the allegations of forced labor. It's not that they're in a commercial relationship. We'll certainly grant that. They're in a normal supplier-reseller arrangement. All right. So, to look at the statute, the way it's written, what ultimately is your understanding of the participate language? I, your honor, I have no question in my mind that the participation standard is nothing different than aiding and abetting in a criminal case. You can call it overt accident, and you can call it over... Well, then, how does... The problem is, of course, that if that were the case, you'd be washing out the, I mean, this seems to have two pieces. You have to participate in a venture, and you have to know that this venture, or know or should have known that this venture involved violations of the statute, but it seems expressly not to require that you be involved in any way in the violations. I, your honor, I don't read it that way at all. I read it as whoever knowingly benefits from participation in a venture, which that person basically knows is a crime.  So, it doesn't... That's knows or should have known. But participate. Participate. Right. In the crime. But not in the... No. See, that's exactly what it doesn't say. There is... Your honor, I can't read it any other way. If you read it just as association, which is really what I'm hearing... Know or should have known. U.S. v. Zafari said you can't do that. Well, it did in an unpublished opinion. It's not presidential and not in the circuit. Okay, but if you look at the other cases that have been said, the participation is much higher. Bristline. The lawyers in Bristline aided and abetted that crime on the compound. No question about it. Okay? In the hotel. They... But let's deal with the words of the statute. I am, your honor. Okay? Let's go through it. Right? It says you have to benefit. I understand that you question the benefit. Let's put that aside for the moment. Okay? Let's suppose... Just as we... On the benefit point, it is different between the two companies, right? The two A.S. companies, the benefit argument or not? There is a... Okay. So for Wales, the group that came in to inspect the fish, they did get paid for that. So they did get a benefit technically from that. But their participation is... Unless they paid... Well, I just... I just want to understand on the benefit point. Because, one, they were actually selling... Or is it the same because they both receive an economic value? Well, Rubicon didn't receive an economic value on the transaction and Wales did, so we have to... Okay. Sorry. I didn't mean... Okay. But then it says, from participation, it doesn't...  something of value. From participation in a venture... What's participation and what's a venture? Your Honor, you don't... You've already pointed out. 1591E4, I can tell you what participation in a venture is. It means knowingly assisting, supporting, or facilitating a violation of this section. Well, except that, A, it's specifically not defined for the purposes of this section. It's only for 1591. And 1591 doesn't have the knowing... The rest of the same language, right? It does have a different mens rea, which makes it... It doesn't have the knowing that there was a violation or know or should have known language. Again, Your Honor, with respect, I don't see how you can parse that definition differently from participation... Isn't the question whether buying shrimp, no matter how much you're buying, is that participating in the venture? Isn't that the question at the end of the day? I understand your argument, but maybe we don't need to go that far. Isn't the question just... Look, buying can't be participation in a venture. It can't be, Your Honor. And... Let me just see for one second. Because, you know, I truly believe that... But that's the only allegation or the only facts we have here is that they bought, right? They didn't... They didn't... Is there any other evidence that they put any restrictions on them that would have encouraged the forced labor? Nothing. All you have is speculation on the facts on the other side. They talk about, I just heard Greg Small went to Thailand. He might have seen some stuff. They never even bothered to pose Greg Small. There's no factual information. It's just speculation, Your Honor. I don't... But it has a should-have-known standard. It is a should-have-known standard, and that... And they did do a lot of... They took... They did audits. They did trainings. They did... They do seem to have been quite involved in how this factory was run. No, I disagree, Your Honor. They were not quite involved in how the factory was run. This is a reseller who went over to look at... You look at processes. You're not... Look... Well, I mean, that's ignoring the fact that they had common ownership, but let's ignore that for the moment, all right? They did have common ownership, right? No, there are people who have ownership in both. I said they had common ownership. Well, Your Honor, okay. The common people who had common ownership. But just suppose this case with Adhikari versus KBR, okay? In that case, a Jordanian corporation is helping the Americans actually commit torture overseas. They get paid on defense contracts, okay, from the United States. Are they subject to jurisdiction of the United States? Judge Ellison says no. These are... Look, Your Honor, these are... That's a different question. I'm not talking about jurisdiction. All I'm saying is the cases can explode if you start defining the terms too broadly. And... Excuse me for a second. And in here, even with the should have known, Your Honor, this wasn't a situation where the American buyers were doing nothing. They brought in an expert independent BAP audit team to come in and look at the facilities, look at how the employees were treated, and they got no red flags at all. Who did that? I'm sorry. BAP, Basic Aquatic Procedure. What's BAP? It's a process by which you have a certification of a facility. So the facility was certified to be safe to work in the United States. Okay. By a United States entity? It's a national. It's an international entity. I don't know where they're based, Your Honor, but they're the only real seafood auditing audit team available, and that's who Walmart... I presume they're focusing on the fish, not on the people. Well, you know what? There's a social accountability part in there where they talk about are the workers getting paid correctly? Are they working overtime? Are they getting vacation time? Is there any child labor? Is there any apparent abuse? In this case, the forced labor is a very subtle one, Your Honor. It deals with document servitude on issues of holding passports and holding work permits, and it deals with deductions from pay, things that are not apparent for someone visiting the facility. You'd have to go in and dig into those issues. I don't think those are the kind of apparent red flags that would be... So your suggestion is that we rule on the basis that there is a sufficiency of the evidence basis. Absolutely. And not get into the question of your exceedingly narrow reading of the statute. Thank you, Your Honor. My reading of the statute that I take from 1591. But you can't do, because it's... I just look back at how that phrase is used in that statute. It's completely different. But it's a unified... I hear it's a unified statute, Your Honor. You're supposed to look at it completely... But when Congress says that this phrase means this for purposes of this subsection, you want me to say that it means it's for purposes of a different subsection. No, but what I want you to do, Your Honor, what Contrary would like you to do is not do the guilt by association proposal that's being asked. Well, that's a different question. I mean, I understand your factual argument. That's a different problem. And one way to deal with this case would be to agree with your factual argument and never get to the rest of it. But that's a different question from whether the phrase here, which seems to treat separately participation in an adventure from... You would be reading the new or should have known entirely out of the statute if, in order to participate in the venture, you had to actually advance the violations. And what's the new or should have known doing there? It's completely functionless. I don't agree, Your Honor. Can you explain to me why not? Okay, because I think, as I read this, just take the men's... Just put known. Why should have known is just a men's rate difference. It's the difference between a criminal and a... I'm sorry. The other provision has no new or should have known. Neither is in there. Right. So let's say whoever knew, whoever knowingly benefits from a participation in a venture that person knew was engaged in a crime. Okay, fine. That seems to me like aiding and abetting, Your Honor. Not really. That's to do something. That advances the violation. But advances the violation is the point. Facilitates. I could use a lot better words. Yeah, but that's what's not here. But what if we decide that we're not going to look at 1591, and we look to the ordinary meaning of the words to interpret the statute, and we go to the dictionary. Participation is defined in Black's Law Dictionary as the act of taking part in something, such as a partnership, a crime, or a trial. And a venture is defined as an undertaking that involves risk, especially a speculative enterprise. So if we apply the normal meaning, the understood meaning to those words, what does that mean? What would be the test for participating in a venture? I think you have to add the ending of the statute. It says engaged in an act in violation of the chapter. So it's telling you what type of ventures they're talking about. They're talking about ventures engaged in the act of a violation of this chapter. Where are you getting that from? I'm sorry. The end of it. That a person knew or should have known has engaged in an act in violation of this chapter. Right. Knew or should have known that, but that's the case. But also the venture, Your Honor. Well, they could have written that, but that's not what it says. It doesn't say a venture which is engaged in an act in violation of – a venture whose purpose is to engage in acts in violation of this chapter. It doesn't say that. Well, if you read it the other way, then you are – let's say Rubicon's negligent. Okay? Should have known, and they got into a commercial venture with an overseas group that was unbeknownst to them, engaged in terrible things. Well, it was unbeknownst, and they wouldn't help. They'd lose. You just cite two general reports of things that are going on in Thailand. Well, that goes back to the question of the – how much evidence you need of knew or should have known. And we could stop there, maybe. But that isn't what you're arguing. You're arguing for something much more broad than that. Again, Your Honor, I think that the participation of the venture with the case law and looking at 1591E4 means participation in a criminal venture, participation meaning doing some act in furtherance of that venture. Well, if that's what he meant, the draftsperson didn't do a very good job because he said exactly the opposite. Well, Your Honor, respectfully, we just disagree. But it is a matter of first impression. I get that. I understand it. I think that if it's read the way the plaintiffs want it to be read, it will explode this statute. Well, the definition of venture includes risk, which would suggest that the participation has to be material in some fashion. So, you know, we have this slippery slope or this line that's very hard to draw where in the Tenth Circuit case, the Viceland case, you have lawyers who are providing legal services to a client, which traditionally is not a basis for the lawyers being liable. You don't usually have, say, the mob lawyers being on the hook for what their clients are doing unless they're involved in it in some fashion. Then you have maybe the example of an accountant who provides accounting services or the other example is a paper supplier or janitorial services or somebody who inspects the packaging as it leaves or the bus drivers who bring the workers to the facility. I mean, there's all different kinds of ways somebody could be participating in the venture. So do they have to have some stake in it? I mean, if that's their only customer, maybe they do have a stake and they would have a reason to further the legal activity. I think your bristling discussion is very appropriate, but I would say, you know, those lawyers were doing something different than just providing legal advice. They knew that there was sexual abuse going on in that compound, and they were drafting agreements to give total power to the overseer and shield his misconduct. So they were helping him in his crime, and that's what Rubicon can't possibly be accused of doing in this case. Okay, so your time is up. Thank you, Your Honor. Thank you very much. You may have one minute. I'm sorry. You have three points and one minute. I've got three points that I'd like to make. One is that the discussion about 1591, I think there's an important piece of information, which is that the statutory definitions that my opposing colleague is relying on and I think the Court quoted to were added in 2015. They were not in effect at the time. And, in fact, the term venture prior to that was defined as means any group of two or more individuals associated, in fact, whether or not a legal entity. That was what applied. It still says that. Excuse me? It still says that with regards to venture. Right. But, I mean, in other words, the words in E-4, participation, invention, that was added in 2015, and they were added for a particular reason relating to a website. And so it wasn't applied to the other provisions. So that can't really be used to define participation and venture here. The second point, and this is I mistakenly replied to the initial question about section by section. RJR Nabisco goes section by section. It defines which sections are extraterritorial and which ones are not. So I'm sorry that I didn't have that up. But does it go phrase by phrase within a section?  But what you're arguing is phrase by phrase. You're taking the words benefit and saying what's the focus of the word benefit. Well, no, I mean, it's the focus of that part. I mean, it's the way in which you one of the things that you can be sued for is knowing benefit, right? Right. So I don't want to take up all your time. You have three points you want to make. But the notion of section by section, so the section 1595, which provides a civil remedy, what's the focus of 1595? That would be what your argument to RJR Nabisco is. Well, I mean, our main argument on 1595 is the analysis in Roe v. Howard, which says that you have a statute that is absolutely – Congress can legislate extraterritorially when it decides to. In RJR, you're dealing with a statute that didn't do that. Morrison deals with a statute that didn't say anything. This is a statute in every conceivable way where Congress has said we want this to be as broad extraterritorially. 1596 provides an extraterritorial provision. But in your briefs, you disavowed reliance on that. You made very specific arguments that I could quote to you saying we're not even relying on that section. We're relying on an appropriate domestic application of the statute, and then go into the RJR Nabisco analysis. Well, for Arubicon and Wells, right, and knowing benefit. No, but also for Fathana. Oh, yeah, you did for Fathana to get to your benefit or attempted benefit argument. Well, we have argued that they have a domestic benefit here for that, right. But in 1589B, right, that's a violation of the statute itself, right? In other words, Arubicon and Wells are perpetrators for that purpose, and that is explicitly made extraterritorial by 1596. My last – Third point. My third point, Your Honor, is that 1594 in terms of attempt, no matter what, applies directly to 1589B, right? So it applies to the substantive statute. The substantive violation, the knowingly benefiting forced labor, which would obviously be applicable to Arubicon and Wells and the others. Thank you, Your Honor. Okay. Thank you both for your arguments in this very complicated case. Ratha v. Fathana Seafood is submitted, and we are adjourned for the week. All rise. This court for this session sends adjourned.
judges: Berzon, Nelson, Bade